JEAN-PAUL P. CART (SBN 267516)
jcart@schiffhardin.com
SCHIFF HARDIN LLP
4 Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: 415-901-8700
Facsimile: 415-901-8791

JACK R. BIERIG (IL SBN 0207039)
(*Pro Hac Vice*)
jbierig@schiffhardin.com
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606
Telephone: 312-258-5500
Facsimile: 312-258-5600

JOHN J. SHAEFFER (SBN 138331)
JShaeffer@FoxRothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Ste 900
Los Angeles, CA 90067
Telephone: 310) 598-4150
Facsimile: (310) 556-9828

NATALMA M. MCKNEW (*PHV*)
TMcknew@FoxRothschild.com
FOX ROTHSCHILD LLP
2 West Washington Street, Ste 1100
Greenville, SC 29601
Telephone: (864) 751-7600
Facsimile: (864) 751-7800

MAUREEN MURRAY (*PHV*)
MMurray@Foxrothschild.com
FOX ROTHSCHILD LLP
300 N. Greene Street, Ste 1400
Greensboro, NC 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

Attorneys for Defendant ABA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE MANNIS, M.D., TONIANNE FRENCH, M.D., and LOUIS LIM, M.D., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN BOARD OF MEDICAL SPECIALTIES, AMERICAN BOARD OF ANESTHESIOLOGY, and AMERICAN BOARD OF EMERGENCY MEDICINE,<br><br>Defendants. | Case No. 3:19-cv-00341-L-RBB<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS OR TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF ILLINOIS**<br><br>Hearing Date: June 24, 2019 (*See* DE 36)<br>Complaint Filed: February 19, 2019<br><br>District Judge: Hon. M. James Lorenz<br>Magistrate Judge: Hon. Ruben B. Brooks<br><br>Trial Date: None Set |

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................... 1

BACKGROUND ....................................................................... 3

ARGUMENT ............................................................................. 6

I.     THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE OR TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS........................................................... 6

     A.     Venue Is Not Proper in the Southern District of California. ................................................................. 6

           1.     Venue Is Not Proper Under § 12 of the Clayton Act. ................................................. 6

           2.     Venue Is Not Proper Under 28 U.S.C. § 1391. ............. 8

           3.     This Case Should Be Dismissed or Transferred to the Northern District of Illinois Under 28 U.S.C. § 1406(a).......................................................... 9

     B.     Even if Venue Were Proper in This District, This Court Should Transfer the Case to the Northern District of Illinois Under 28 U.S.C. § 1404(a).......................................... 10

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER THE SHERMAN ACT, THE CARTWRIGHT ACT, OR THE UNFAIR COMPETITION LAW. ................................................... 11

     A.     Plaintiffs Have Failed to Allege Facts Showing that Any Defendant Has Engaged in A Restraint of Trade. ................... 12

     B.     Plaintiffs Have Failed to Allege Any Facts That Would Support a Tying Claim. ................................................. 18

           1.     Plaintiffs Have Failed to Allege Two Separate Products for Purposes of Their Tying Claim. ................ 18

           2.     Plaintiffs Have Failed to Allege Market Power. ............ 21

           3.     Plaintiffs Have Failed To Allege Foreclosure Of A Not Insubstantial Amount of Commerce. ..................... 22

     C.     Plaintiffs Have Failed To Allege Any Facts That Would Support A Claim of Monopolization. ................................ 23

     D.     Plaintiffs Have Failed To Allege Facts Supporting A Finding Of Antitrust Injury....................................... 25

1

2

**TABLE OF CONTENTS**
(continued)

Page

III.   PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM FOR UNJUST ENRICHMENT. ............................................................... 27

    A.   Plaintiffs' Unjust Enrichment Claim Against ABMS Should Be Dismissed. ............................................. 27

    B.   Plaintiffs' Unjust Enrichment Claim Against ABEM and ABA Should Be Dismissed. ................................. 27

IV.   ABMS AND ABEM EACH HAVE SEPARATE GROUNDS FOR DISMISSING PLAINTIFFS' CLAIMS. ................................. 28

    A.   Plaintiffs Do Not Have Standing to Sue ABMS Under the Sherman Act Because They Are Not Direct Purchasers. ......... 28

    B.   Plaintiffs Have Agreed to Arbitrate Any Claims Against ABEM. ........................................................... 29

CONCLUSION ................................................................................ 30

SIGNATURE CERTIFICATION ..................................................... 31

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

# TABLE OF AUTHORITIES

**Page**

*Abraham v. Intermountain Health Care, Inc.*,
  394 F. Supp. 2d 1312 (D. Utah 2005)................................................20

*Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n*,
  516 F. Supp. 378 (S.D.N.Y. 1981)....................................................8

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group, LP*,
  592 F.3d 991, 1001 (2010)...............................................................23

*Allyn v. American Board of Medical Specialties, Inc.*,
  No. 5:18-CV-355-OC-30PRL, 2019 WL 297459
  (M.D. Fla. Jan. 3, 2019), *report and recommendation adopted*,
  No. 5:18-CV-355-OC-30PRL, 2019 WL 293277
  (M.D. Fla. Jan. 23, 2019) ................................................................16

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171, 1183 (9th Cir. 2016)................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................3, 14

*Association of American Physicians & Surgeons, Inc. v. American Board of
  Medical Specialties*,
  No. 14-CV-02705, 2017 WL 6821094 (N.D. Ill. Dec. 13, 2017)..............14, 16

*Association of American Physicians & Surgeons, Inc. v. American Board of
  Medical Specialties*,
  No. CIV.A. 13-2609 PGS, 2014 WL 1334260 (D.N.J. Apr. 2, 2014)..................8

*Atlantic Richfield Co.*,
  495 U.S. at 334................................................................................25

*Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.*,
  784 F.2d 1325 (7th Cir. 1986)......................................................21, 22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................13

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192, 1199 (9th Cir. 2012)........................................22, 25, 26

*Brunswick Corp.*,
  429 U.S. at 489...............................................................................25

*Collins v. Associated Pathologists*,
  844 F.2d 473 (7th Cir. 1988)............................................................19

*Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*,
  No. 12-cv-36, 2012 WL 5387356 (N.D. Miss. Nov. 1, 2012)..................7

*Cox v. Ocean View Hotel Corp.*,
  533 F.3d 1114 (9th Cir. 2008)..........................................................29

*Daniel v. American Board of Emergency Medicine*,
  428 F.3d 408 (2d Cir. 2005)..........................................................7, 9

1

## TABLE OF AUTHORITIES

2

Page

3   *DeGregorio v. American Board of Internal Medicine*,
   No. 92-cv-4924, 1993 WL 719564 (D.N.J. Oct. 1, 1993) ................................... 14

4   *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008) ........................................................................... 29

5

6   *DM Research, Inc. v. Coll. of American Pathologists*,
   170 F.3d 53 (1st Cir. 1999) ................................................................................ 14

7   *Duck Dive LP v. Heydari*,
   No. 13-CV-1477, 2013 WL 5724050 (S.D. Cal. Oct. 21, 2013) ................... 9, 10

8   *Golf City, Inc. v. Wilson Sporting Goods Co.*,
   555 F.2d 426 (5th Cir. 1977) ............................................................................... 8

9   *Hilton v. Children's Hospital-San Diego*,
   Case No. 02-cv-1080, 2007 WL 935724 (SD Cal. March 7, 2007) .................. 26

10

11  *Illinois Tool Works Inc. v. Independent Ink, Inc.*,
   547 U.S. 28 (2006) ............................................................................................. 21

12  *Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ........................................................................................... 28

13  *International Healthcare Management v. Hawaii Coalition For Health*,
   332 F.3d 600 (9th Cir. 2003) ................................................................... 13, 14, 15

14  *International Norcent Technology v. Koninklijke Philips Electronics, N.V.*,
   Case No. CV 07-00043, 2007 WL 4976364

15  (C.D. Cal. Oct. 29, 2007) .................................................................................. 24

16  *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ......................................................................................... 18, 21

17  *Johnson v. Law*,
   19 F. Supp. 3d 1004 (S.D. Cal. 2014) ............................................................... 10

18

19  *Jung v. Association of American Medical Colleges*,
   300 F. Supp. 2d 119 (D.D.C. 2004) ..................................................................... 8

20  *Kansas v. UtiliCorp United, Inc.*,
   497 U.S. 199 (1990) ........................................................................................... 28

21  *Kaufman v. Time Warner*,
   836 F.3d 137 (2d Cir. 2016) .............................................................................. 21

22  *Klamath-Lake Pharm. Association v. Klamath Medical Service Bureau*,
   701 F.2d 1276 (9th Cir. 1983) ...................................................................... 19, 20

23

24  *Kreuzer v. American Academy of Periodontology*,
   735 F.2d 1479 (D.C. Cir. 1984) ........................................................................ 15

25  *Lane v. Wells Fargo Banks, N.A.*,
   No. C 12-04026, 2013 WL 5587942 (N.D. Cal. Oct. 10, 2013) ........................ 19

26  *Leroy v. Great Western United Corp.*,
   443 U.S. 173 (1979) ............................................................................................. 9

27  *Les Shockley Racing, Inc. v. National Hot Rod Association*,
   829 F.2d 729, 735 (9th Cir. 1989) ..................................................................... 26

28

1

**TABLE OF AUTHORITIES**

**Page**

2

3

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) ................................................................. 29

4

*Marrese v. American Academy of Orthopaedic Surgeons,*
   No. 91-1366, 1992 WL 246906 (7th Cir. Oct. 1, 1992) ..................................... 16

5

6

*McDaniel v. Appraisal Institute,*
   117 F.3d 421 (9th Cir. 1997) ................................................................. 15

7

*Name.Space, Inc. v. Internet Corp. of Assigned Names and Numbers,*
   795 F.3d 1124 (9th Cir. 2015) ............................................................... 11

8

*Natkin v. American Osteopathic Association,*
   Case No. 3:16-cv-01494, 2018 WL 452165 (D. Ore. Jan. 17, 2018) ............. 26, 27

9

*Nazara v. FR Log Homes, Inc.,*
   474 Fed. Appx. 517 (9th Cir. 2012) ......................................................... 30

10

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.,*
   555 U.S. 438 (2009) ................................................................. 21, 23, 24

11

*Paladin Associates, Inc. v. Montana Power Co.,*
   328 F.3d 1145 (9th Cir. 2003) ............................................................... 18

12

*Paracor Finance, Inc. v. General Electric Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996) ................................................................. 27

13

*Patel v. American Board of Psychiatry & Neurology, Inc.,*
   No. 89-cv-1751, 1989 WL 152816 (N.D. Ill. Nov. 21, 1989) ............................ 12

14

15

*Peterson v. Cellco P'ship,*
   164 Cal. App. 4th 1583 (2008) ............................................................... 28

16

*Piedmont Label Co. v. Sun Garden Packing Co.,*
   598 F.2d 491 (9th Cir. 1979) .................................................................. 9

17

*Poindexter v. American Board of Surgery, Inc.,*
   911 F. Supp. 1510 (N.D. Ga. 1994) ......................................................... 14

18

*Reazin v. Blue Cross and Blue Shield of Kansas, Inc.,*
   899 F.2d 951,961 (10th Cir. 1990) .......................................................... 25

19

20

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC,*
   532 F.3d 963 (9th Cir. 2008) ................................................................. 21

21

*S.C. Johnson & Son, Inc. v. Gillette Co.,*
   571 F. Supp. 1185 (N.D. Ill. 1983) .......................................................... 11

22

*S&N Equipment Compensation v. Casa Grande Cotton Finance Co.,*
   97 F.3d 337 (9th Cir. 1996) .................................................................. 19

23

*Saleh v. Titan Corp.,*
   361 F. Supp. 2d 1152 (S.D. Cal. 2005) ..................................................... 10

24

25

*Sanderson v. Spectrum Labs, Inc.,*
   227 F. Supp. 2d 1001 (N.D. Ind. 2000) ...................................................... 7

26

27

28

1

**TABLE OF AUTHORITIES**

2

Page

3

*Sanjuan v. American Board of Psychiatry & Neurology,*
   40 F.3d 247 (7th Cir. 1994).................................................16, 22, 25

4

*Schachar v. American Academy of Ophthalmology, Inc.,*
   870 F.2d 397 (7th Cir. 1989)...........................................12, 13, 14, 20

5

*Shaywitz v. American Board of Psychiatry and Neurology,*
   675 F. Supp. 2d 376, 387 (S.D.N.Y. 2009)...........................................27

6

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.,*
   709 F. Supp. 2d 802 (C.D. Cal. 2010) ........................................ 12, 15

7

*United States v. Scophony Corp.,*
   333 U.S. 795 (1948)................................................................7

8

*Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP,*
   540 U.S. 398 (2004) ......................................................... 12, 20

9

10

*William O. Gilley Enterprise, Inc. v. Atlantic Richfield Co.,*
   588 F.3d 659 (9th Cir. 2009)......................................................11

11

*Yeager's Fuel v. Pennsylvania Power & Light Co.,*
   953 F. Supp. 617 (E.D. Pa. 1997) ................................................19

12

**<u>Statutes</u>**

13

9 U.S.C. § 1.......................................................................29

14

15 U.S.C. § 1................................................................. 11, 12

15

15 U.S.C. § 2................................................................. 11, 12

16

15 U.S.C. § 15(a)...............................................................5, 28

17

15 U.S.C. § 22..................................................................6, 10

18

28 U.S.C. § 1391(b)..........................................................6, 8, 9

19

28 U.S.C. § 1404(a)........................................................1, 6, 10

28 U.S.C. § 1406(a)........................................................1, 9, 10

20

28 U.S.C. § 1407....................................................................1

21

Cartwright Act, Cal. Bus. & Prof. Code § 16700, et seq .........................11

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.........................11

22

23

24

25

26

27

28

## **INTRODUCTION**

In this case, three physicians who have been certified by two separate member Boards of defendant American Board of Medical Specialties ("ABMS") challenge the Maintenance of Certification ("MOC") programs that are administered by these two Boards for the purpose of determining whether physicians whom they have certified continue to merit their certification. The plaintiff physicians allege that the MOC programs of these two Boards, the American Board of Emergency Medicine ("ABEM") and the American Board of Anesthesiology ("ABA"), violate the Sherman Act and state law. Plaintiffs do so even though their participation in MOC is voluntary and even though the MOC program does nothing more than provide information about the credentials of physicians to hospitals, insurers, patients, and the public.

Preliminarily, venue in this Court is improper. As we demonstrate in Part I, none of ABMS, ABEM, and ABA resides or transacts business in California, and the activities giving rise to this suit did not occur here. Accordingly, the case should be dismissed or transferred to the Northern District of Illinois pursuant to 28 U.S.C. §1406. But even if venue were held to be proper, this case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. §1404 for the convenience of the parties and witnesses and in the interests of justice.[1]

Substantively, the Complaint should be dismissed because it fails to state a cause of action. With respect to the antitrust claims, plaintiffs have not alleged, and

---

[1] This case is the subject of a motion before the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407 to consolidate three other actions against other ABMS member Boards before this Court. *See* Motion to Transfer, *In re American Board of Medical Specialties Maintenance of Certification Antitrust Litigation* ("*In re ABMS*"), No. 2888 (JPML Feb. 28, 2019), ECF No. 1. ABMS, ABEM, and ABA opposed consolidation. They also argued that, if the cases are consolidated, they should be transferred to the Northern District of Illinois for reasons similar to those stated in this memorandum. *See,* e.g., Opposition to Motion to Transfer, *In re ABMS*, No. 2888 (JPML Mar. 22, 2019), ECF No. 27. Plaintiffs' motion before the JPML has been noticed for hearing on May 30, 2019. *See* Notice of Hearing, *In re ABMS*, No. 2888 (JPML April 10, 2019), ECF No. 32.

cannot fairly allege, that the challenged MOC programs impose any restraint of trade. All that these programs do is provide a mechanism by which member Boards of ABMS determine whether physicians who wish to maintain their certification by these Boards merit continuing certification. The MOC programs provide information to decision-makers but impose no restraint whatsoever.

With respect to their claim that MOC involves an unlawful tying arrangement, plaintiffs have failed to allege facts that would support a conclusion that MOC involves two separate products or that ABMS member Boards have market power. ABEM and ABA each offers one single product: certification. As the very name "Maintenance of Certification" demonstrates, MOC is simply a mechanism for determining whether, given the passage of time and developments in medicine, a certified physician is entitled to maintain certification.

In any event, ABEM and ABA do not have market power because, as alleged by plaintiffs themselves, other certifying Boards also certify physicians in the same specialties. The allegation that these Boards have a high market share is insufficient to allege market power. Further, plaintiffs have not alleged, and cannot allege, any conduct that would constitute monopolization or unjust enrichment. And the injury that plaintiffs claim, *i.e.* excessive price for participation in MOC, does not constitutes antitrust injury – as required under both federal and state antitrust law.

Finally, apart from the improper venue and the failure to state a cause of action, plaintiffs have no valid claims against ABMS because ABMS does not certify physicians or administer any MOC program. And the claims of the two plaintiffs who have been certified by ABEM cannot go forward because these plaintiffs have agreed that any disputes that they might have with ABEM are to be resolved by arbitration rather than by litigation. Thus, for the reasons set forth in this memorandum, the case should be dismissed or transferred to the United States District Court for the Northern District of Illinois.

1

## **BACKGROUND**

2

 ***ABMS and the Certification Process.*** ABMS is an Illinois not-for-profit

3

corporation headquartered in Chicago. (Compl. ¶16.)[2] It is the umbrella

4

organization for twenty-four member Boards in various medical specialties,

5

including ABEM and ABA. (*Id.* at ¶¶ 16-41 (listing the member Boards).) Each of

6

the member Boards certifies physicians in its particular medical specialty if the

7

physician voluntarily seeks certification, completes an accredited medical residency

8

program in the specialty, passes an examination administered by the member

9

Board, and otherwise complies with the Board's requirements for certification. (*Id.*

10

at ¶¶ 2, 44, 54.)

11

 Certification by an ABMS member Board is not necessary to practice

12

medicine in the United States. (*Id.* at ¶¶ 2, 42.) Rather, certification is a voluntary

13

process that allows physicians to demonstrate their qualifications in their medical

14

specialty, their commitment to lifelong learning in that specialty, and their

15

knowledge and expertise in that area. (*Id.* at ¶¶ 2, 44, 46.) Certification is relied

16

upon by health care institutions, insurers, patients, and others as a way to determine

17

a physician's credentials in a given specialty. (*Id.* at ¶¶ 4, 46, 49-51.)

18

 Historically, some ABMS member Boards certified qualified physicians

19

without any time limitation.[3] (*Id.* at ¶ 55.) However, ABMS and its member Boards

20

came to recognize that the state-of-the-art in each medical specialty evolves over

21

time and that a physician's knowledge of, and skills in, a particular specialty may

22

deteriorate. ABMS and its member Boards therefore instituted a program for

23

periodic recertification. Initially, this program required retesting every ten years.

24

---

[2] For purposes of the motion to dismiss under Rule 12(b)(6), defendants accept as

25

true the well-pleaded factual allegations of the Complaint. They do not accept, however, conclusory statements made without a specific factual allegation. *Ashcroft*

26

*v. Iqbal*, 556 U.S. 662, 681 (2009).

27

[3] Plaintiffs imply that all ABMS member Boards previously granted certification without any time limits. (Compl. ¶ 55.) However, plaintiffs have not alleged, and

28

cannot truthfully allege, that ABEM has ever issued non-time limited certification.

(*Id.* at ¶ 55.) However, ABMS and its member Boards eventually recognized that it was not sufficient to take a test every ten years to demonstrate entitlement to continued certification. They therefore determined to require physicians to demonstrate that certified physicians were complying with the requirements of MOC on an ongoing basis. (*Id.* at ¶¶ 56-58.)

It should be stressed that, as plaintiffs themselves have recognized, Board certification, of which the MOC program is a part, is entirely voluntary and is not needed to practice medicine. (*Id.* at ¶¶ 2, 42.). State licensure is all that is required for a physician to practice. But, because of the value of the information that the certification process provides to potential employers, insurers, and patients, most physicians have chosen to seek and maintain certification.[4]

***Plaintiffs' Substantive Allegations.*** Plaintiffs are three physicians – a retired emergency physician, a practicing emergency physician, and a practicing anesthesiologist – who are, or have been, certified by ABEM or ABA. (Compl. ¶¶ 13-15.) They allege that they have paid defendants "inflated supracompetitive payments for MOC" and have therefore been injured. (*Id.* at ¶¶ 7, 83-86.)

Plaintiffs fail to allege any facts to support a claim of an antitrust violation or any other unlawful conduct. First, they have not alleged that ABMS or its member Boards have the ability to compel any physician to seek or maintain Board certification. As plaintiffs themselves have acknowledged, certification is not needed to practice medicine in the United States. (Compl. ¶¶ 2, 42.) Plaintiffs complain that they cannot access certain hospitals or insurance networks without

---

[4] Plaintiffs cite at length from a letter by Robert Potter, Chief Competition Policy & Advocacy Section, U.S. Department of Justice, stating that that the "DOJ has expressed specific competition-related concerns" "in the context of [initial board certification]." (Compl. ¶ 47.) Mr. Potter's stated concern is that certification of physicians may become a barrier to entry in the market for physician care, leading to fewer physicians and higher costs to patients. (*Id.* at ¶¶ 47-48.) However, even plaintiffs in this case support certification. What they object to is the requirement that they must periodically demonstrate their entitlement to continued certification. Thus, Mr. Potter's comments have no relevance to plaintiffs' claims in this case.

maintaining certification, but they have made no allegations that ABMS or its member Boards have any control over the decisions of those third parties – or that defendants do anything other than provide information to decision-makers.

Second, plaintiffs allege that ABMS and its member Boards have illegally tied the sale of initial Board certification ("IBC"), a service that they wish to purchase, to the sale of MOC, a service that they do not wish to purchase. (*Id.* at ¶ 83.) But IBC and MOC are not two separate products. They are parts of a single product: certification. At one time, certification by some member Boards was not time-limited. Now, however, maintaining certification requires proof that the certified physician merits maintenance of certification. This change in the applicable rules of some Boards does not transform certification into two products.

In connection with their tying claim, plaintiffs assert that ABMS and its member Boards have market power, but they fail to allege any facts to support this allegation. (*Id.* at ¶ 72.) Likewise, they fail to allege any conduct that would support a finding of monopolization. To the contrary, they allege the existence of competitive Boards that certify in the same specialties as the defendant Boards. This allegation belies the conclusory allegations that the defendant Boards have market power. Likewise, plaintiffs have failed to allege any facts supporting their claim of unjust enrichment. And the injury that they allege, *i.e.* having to pay what they believe to be an excessively high price for MOC, is not the type of antitrust injury which a plaintiff in an antitrust case must prove.

Finally, apart from the merits, because plaintiffs do not allege that they are injured by virtue of any conduct of ABMS (as opposed to the Boards that certified them), they cannot state an antitrust claim against ABMS under § 4 of the Clayton Act, 15 U.S.C. § 15. And because the two emergency physician plaintiffs have agreed to arbitrate, rather than litigate, any dispute with ABEM, they cannot pursue claims against ABEM in this court.

## ARGUMENT

## I.   THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE OR TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS.

ABMS is an Illinois not-for-profit corporation located in Chicago, Illinois. ABEM is a Michigan not-for-profit corporation located in East Lansing, Michigan. ABA is a Connecticut not-for-profit corporation located in Raleigh, North Carolina. Because ABMS, ABEM, and ABA do not transact business in the Southern District of California, and because plaintiffs have alleged no facts to suggest that a substantial part of the events giving rise to its claims occurred here, the Southern District of California is an improper venue both under § 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b). Alternatively, if this Court concludes that venue is proper, the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer the case to the Northern District of Illinois.

### A.   *Venue Is Not Proper in the Southern District of California.*

#### 1.   Venue Is Not Proper Under § 12 of the Clayton Act.

Plaintiffs assert that venue is proper in this District under § 12 of the Clayton Act, 15 U.S.C. § 22, "because defendants reside, transact business, are found, or have agents in this District . . . ." (Compl. ¶ 11.) That statute provides, in relevant part, as follows: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22. Plaintiffs do not allege that any of ABMS, ABEM, or ABA is an "inhabitant" of this District or "may be found" here. Therefore, the only question under § 12 is whether ABMS, ABEM, and ABA "transact[] business" here.

Plaintiffs' conclusory assertion that ABMS, ABEM, and ABA "operate and transact business" in the Southern District of California is without merit. (Compl. ¶ 12.) None of defendants has an office or "facilities or employees" in this District or

is "registered to do business" in California. Nor does any defendant "advertise in publications specifically targeted to residents" of this District. *See Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1006-07 (N.D. Ind. 2000); (Declaration of John D. Mandelbaum, ¶ 5; Declaration of Earl J Reisdorff, M.D., ¶ 5; Declaration of Daniel J. Cole ¶ 6). The Court should not accept plaintiffs' unsupported conclusory allegations to the contrary.

Notably, plaintiffs do not allege a single fact to suggest that ABMS, ABEM, or ABA does business of any substantial character in this state. *See United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948) (explaining that the "test of venue" under the Clayton Act is whether a party is engaged in the "practical, everyday business or commercial concept of doing or carrying on business of any substantial character" (internal quotation marks removed)). Plaintiffs' failure to plead such facts renders venue under the Clayton Act improper. *See Sanderson*, 227 F. Supp. 2d at 1007 ("[A] plaintiff cannot merely plead that a defendant is 'transacting business,' but must plead sufficient facts demonstrating that the defendant transacts business of a substantial nature within the district."); *Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*, No. 12-cv-36, 2012 WL 5387356, at *6 (N.D. Miss. Nov. 1, 2012) (holding no venue under the Clayton Act where plaintiffs failed to show, "other than by general unsubstantiated allegations, that AT & T Inc. was or is transacting business or found within this Court's reach").

To be sure, ABEM and ABA certify physicians who practice in California. But that undisputed fact does not constitute "transact[ing] business" in this District for purposes of § 12 of the Clayton Act. Thus, in a closely analogous case that specifically involved defendant ABEM, the Second Circuit held that ABEM's certification of physicians in the Western District of New York did not satisfy the venue requirements of § 12. *See Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 428-30 (2d Cir. 2005). The Court of Appeals noted that ABEM operates out of its headquarters in Michigan, did not develop its standards in the Western

District of New York, and had no "office, telephone, bank account, or mailing address" there. *Id.* at 430. These observations are equally true with respect to the Southern District of California for both ABEM and ABA. (Reisdorff Decl. ¶¶ 5, 6; Cole Decl. ¶¶ 6, 7.)

The impropriety of venue in this District for ABMS is even clearer: ABMS has no meaningful connection to this District. It does not certify physicians at all and thus has never certified any physicians who practice in this District or elsewhere. (Mandelbaum Decl. ¶ 6.) ABMS requires its member Boards to have MOC programs with certain parameters, but each individual member Board is responsible for developing its own MOC program. (*Id.* at ¶ 4.) Moreover, *none* of the twenty-four member Boards of ABMS is located in California. (*Id.* at ¶ 8.)

In similar circumstances, district courts in New Jersey and in Washington D.C. have dismissed actions under the Clayton Act against ABMS and similar organizations based on improper venue. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, No. CIV.A. 13-2609 PGS, 2014 WL 1334260, at *5 (D.N.J. Apr. 2, 2014); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 140 (D.D.C. 2004). *See also Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 437-38 (5th Cir. 1977) (explaining that "a professional association does not 'transact business' in a judicial district merely because some of its members reside in the district and receive the association's publications there"); *Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n*, 516 F. Supp. 378, 381 (S.D.N.Y. 1981) (dismissing complaint against American Podiatry Association for lack of venue in light of the "sporadic nature of its certification and evaluation activities in this District"). This Court should do the same.

### 2. Venue Is Not Proper Under 28 U.S.C. § 1391.

Plaintiffs assert that venue is proper in this District under 28 U.S.C. § 1391, because "a substantial portion of the affected interstate trade and commerce described below has been carried out in this District." (Compl. ¶ 11.) That statute

provides, in relevant part, as follows: "Any civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). The allegations in the Complaint are insufficient to establish venue in this District under 28 U.S.C. § 1391(b)(2).

"'Substantiality' for venue purposes is determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum." *Duck Dive LP v. Heydari*, No. 13-CV-1477, 2013 WL 5724050, at *2 (S.D. Cal. Oct. 21, 2013) (quoting *Daniel*, 428 F.3d at 432-34). "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* (quoting *Daniel*, 428 F.3d at 433). Requiring substantiality ensures that the venue statute serves its basic purpose, which is "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184 (1979) (emphasis in original).

Plaintiffs' conclusory assertion that ABMS, ABEM, and ABA "reside" in the Southern District of California is insufficient to establish venue. (Compl. ¶ 11.) Plaintiffs have not alleged facts sufficient to show that a substantial part of the events giving rise to the claim occurred in the Southern District of California. Indeed, plaintiffs have not alleged that ABMS has ever done *anything* in this District that has any bearing on their claims. Thus, as in *Daniel*, § 1391(b)(2) provides no basis for venue here. *See* 428 F.3d at 434.

### 3. This Case Should Be Dismissed or Transferred to the Northern District of Illinois Under 28 U.S.C. § 1406(a).

Plaintiffs bear the burden of proving that "venue is proper with respect to each claim and each defendant challenging the choice of forum." *Duck Dive LP*, 2013 WL 5724050, at *2 (citing *Piedmont Label Co. v. Sun Garden Packing Co.*,

598 F.2d 491, 496 (9th Cir. 1979)). Because venue is improper in this District for ABMS, ABEM, and ABA, the Court should dismiss this case or transfer it to the Northern District of Illinois. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). As explained below, venue would be proper for ABMS, ABEM, and ABA in the Northern District of Illinois.

**B.    *Even if Venue Were Proper in This District, This Court Should Transfer the Case to the Northern District of Illinois Under 28 U.S.C. § 1404(a).***

If this Court were to conclude that venue is proper in this District, the Court should nonetheless exercise its discretion to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). That statute provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* Because ABMS resides in Chicago, venue would be proper for ABMS in the Northern District of Illinois. In addition, ABMS member Boards, including ABEM and ABA, attend annual meetings in Chicago, and ABEM and ABA consent to venue in the Northern District of Illinois for the purposes of this litigation. (Mandelbaum Decl. ¶ 8; Reisdorff Decl. ¶ 7; Cole Decl. ¶ 8.) Chicago is also more convenient and much closer to ABMS, ABEM, and ABA headquarters than is San Diego.

Although a plaintiff's choice of forum is ordinarily afforded deference, the plaintiff's choice is entitled to less weight where the action has little connection with the chosen forum and where the action is brought as a class action. *Johnson v. Law*, 19 F. Supp. 3d 1004, 1010–11 (S.D. Cal. 2014); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157–58 (S.D. Cal. 2005). Here, the development and discussion of ABMS's MOC policy occurred principally in Chicago. (*See* Mandelbaum Decl. ¶ 9.) Similarly, the development of ABEM's MOC program occurred in East Lansing

1  and the development of ABA's MOC program occurred in Raleigh. (*See* Reisdorff

2  Decl. ¶ 6; Cole Decl. ¶ 7.) It may be that the three plaintiffs reside within this

3  District, but the members of the purported class reside throughout the United States,

4  including Illinois. Most importantly, the key events giving rise to the alleged

5  unlawful conduct have no connection to this District at all. Thus, it would be in the

6  interests of justice to transfer the case to the Northern District of Illinois. *See S.C.*

7  *Johnson & Son, Inc. v. Gillette Co.* 571 F. Supp. 1185, 1187-88 (N.D. Ill. 1983)

8  ("As a general rule, the preferred forum is that which is the center of the accused

9  activity.").

10  **II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO**
        **STATE A CLAIM UNDER THE SHERMAN ACT, THE**
11      **CARTWRIGHT ACT, OR THE UNFAIR COMPETITION LAW**.

12          Plaintiffs claim that defendants have violated Sections 1 and 2 of the

13  Sherman Act, 15 U.S.C. §§ 1 and 2, the Cartwright Act, Cal. Bus. & Prof. Code §

14  16700, *et seq*., and the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et*

15  *seq.,* by imposing a restraint of trade and by tying the purchase of MOC to initial

16  medical specialty certification. (Compl. ¶¶ 83-100.)[5] But plaintiffs have failed to

17  state a claim under federal or state antitrust law or unfair competition law, as they

18  have not alleged that ABMS, ABEM, or ABA has done anything more than provide

19  information to others about the credentials of physicians and because neither

20  ABMS, ABEM, nor ABA has any ability to compel plaintiffs to purchase MOC.

21          Moreover, plaintiffs' tying claim must fail for three reasons. First, there are

22  not two separate products at issue. Rather, there is a single product, certification.

23  Second, plaintiffs have failed to allege facts to show that ABMS, ABEM, or ABA

24

25  [5] The analysis under the Cartwright Act is generally similar to that under the
    Sherman Act. *Name.Space, Inc. v. Internet Corp. of Assigned Names and Numbers*,
26  795 F.3d 1124, 1131 n.5 (9th Cir. 2015); *William O. Gilley Enter., Inc. v. Atl.*
    *Richfield Co.*, 588 F.3d 659, 661 (9th Cir. 2009). Additionally, plaintiffs' claim for
27  violation of unfair competition law is purely derivative of their Sherman Act and
    Cartwright Act claims. (Compl. ¶ 103.) This claim should be dismissed for the
28  same reasons as plaintiffs' Sherman Act and Cartwright Act claims.

has market power. All that they have alleged is that defendants have a high market share. But plaintiffs' own allegations reveal that, in this case, high market share does not mean market power. Third, the fact that MOC imposes no restraint means that a substantial amount of commerce cannot have been foreclosed.

Plaintiffs' monopolization claim fails both because plaintiffs have not adequately alleged market power or any unfair or deceptive practices by any defendant. The unjust enrichment claim also fails for much the same reasons. Finally, plaintiffs have failed to allege any antitrust injury. Rather, the injury that they claim, *i.e.* having to pay more than they would like in order to participate in MOC, is not the sort of injury that the antitrust laws prohibit.

### A.   *Plaintiffs Have Failed to Allege Facts Showing that Any Defendant Has Engaged in A Restraint of Trade.*

Section 1 of the Sherman Act forbids any "contract, combination in the form of trust or otherwise, or conspiracy, in the restraint of trade or commerce." 15 U.S.C. § 1. Likewise, a claim under Section 2 of the Sherman Act must allege an element of anticompetitive conduct. *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). But "[t]here can be no restraint of trade without a restraint." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir. 1989) (Easterbrook, J.). *See also TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 802, 810 (C.D. Cal. 2010).

Here, no restraint has been alleged. Although plaintiffs assert that ABMS has "imposed" MOC on physicians or "forced" their participation in MOC, (Compl. ¶¶ 5, 60, 71), its own allegations confirm that the program is entirely voluntary. (*Id.* at ¶¶ 42-44 (comparing the mandatory requirements of medical degree, passing United States Medical Licensing Examination, state license, and continuing medical licensing, with voluntary certification by ABMS member Boards). Plaintiffs have not alleged, and cannot allege, that ABMS, ABEM, or ABA forced them to

participate in the MOC program, or otherwise "restrained" plaintiffs in any way. Absent such an allegation, the case must be dismissed. *See Patel v. Am. Bd. of Psychiatry & Neurology, Inc.*, No. 89-cv-1751, 1989 WL 152816, at *3 (N.D. Ill. Nov. 21, 1989) (dismissing complaint where plaintiff "failed to allege that defendant has any authority or control over the private hospitals and institutions which allegedly will not hire him to staff positions absent certification").

Controlling Ninth Circuit law confirms this point. In *International Healthcare Management v. Hawaii Coalition For Health*, 332 F.3d 600 (9th Cir. 2003), the Court rejected a claim that a professional association of physicians had fixed prices or facilitated a group boycott of a new managed health care network. The network argued that the association had engaged in anticompetitive conduct by warning its members against joining the network. *Id.* at 607. But the association had no authority to negotiate for individual physician members, and physicians were not bound by anything that the association said or did. *Id.* Even if a substantial number of members took whatever action the association recommended, this at most showed that the association was influential. *Id.* at 606 (citing *Schachar*, 870 F.2d at 399, as finding no restraint of trade because the communication did not constrain anyone to follow the association's advice).

An antitrust complaint must contain sufficient factual content to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not suffice. *Id.* at 555, 557. Rather, a plaintiff must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Here, plaintiffs have failed to allege facts sufficient to show that they have stated a plausible claim.

Plaintiffs do not allege that ABMS, ABEM, or ABA has engaged in any coercive measures to force them to participate in MOC – or that ABMS, ABEM, or

ABA has any control over the staffing decisions of hospitals or the coverage decisions of health care insurers. To the contrary, ABMS and its member Boards, including ABEM and ABA, implement professional standards for the certification process, and provide information about physicians' compliance with those standards to patients, hospitals, insurance companies, and businesses. (*See*, *e.g.*, Compl. ¶¶ 44, 46, 50, 51.) Informing the public about a physician's credentials does not constitute a restraint of trade.

As Judge Easterbrook has explained, "when a trade association provides information . . . but does not constrain others to follow its recommendation, it does not violate the antitrust laws." *Schachar*, 870 F.2d at 399. *See also Int'l Healthcare Mgmt.*, 332 F.3d at 608 ("Disseminating information that fosters rational business decisions is pro-competitive."); *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, No. 14-CV-02705, 2017 WL 6821094, at *5 (N.D. Ill. Dec. 13, 2017) ("It is commonplace, and often very useful, for organizations to recommend quality standards or adopt them as part of a certification process. Merely to say that the standards are disputable or have some market effects has not generally been enough to condemn them as 'unreasonable' under the Sherman Act." (brackets and ellipses omitted)) (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 57 (1st Cir. 1999)); *Poindexter v. Am. Bd. of Surgery, Inc.*, 911 F. Supp. 1510, 1520 (N.D. Ga. 1994) ("After the Board expresses its informed opinion regarding the sufficiency of a surgeon's academic training or credentials, users of that information have the sole power to determine whether that surgeon is entitled to patronage, surgical privileges, or preferred insurance rates."); *DeGregorio v. Am. Bd. of Internal Medicine*, No. 92-cv-4924, 1993 WL 719564, at *10 (D.N.J. Oct. 1, 1993) (report & recommendation), *adopted in relevant part*, 844 F. Supp. 186, 187 (D.N.J. 1994) (rejecting antitrust claims as "Board neither grants licenses to practice medicine, nor does it have any authority to do so" and "there [was] no evidence indicating that the Board has any control over how third

parties view its certifications").

Plaintiffs attempt to suggest that the MOC program is binding rather than voluntary by alleging that Board certification "has become a *de facto* requirement for meaningful participation in the commercial practice of medicine" and that Board certified physicians must complete MOC into order to maintain their certification. (Compl. ¶¶ 4-5.) But plaintiffs also allege that the reason that certification has become a so-called "requirement" is that hospitals and insurers seek to use it for information about a physician's skill, knowledge, and ability in a particular field. (*Id.* at ¶¶ 4, 44, 50, 51.) It is not "required" in any legal sense.

The Complaint does not set forth a single factual allegation to support the conclusion that the decisions of hospitals and health insurers were a result of a conspiracy with ABMS or any of its member Boards – as opposed to the outcome of the independent decision-making of each of those organizations. It is more likely – and not inconsistent with any facts alleged – that each of these organizations decided that the MOC program is a valuable signal of quality.[6] Certification programs enhance competition and the efficiency of markets by reducing search costs and mistakes. *McDaniel v. Appraisal Institute*, 117 F.3d 421, 423 (9th Cir. 1997) ("[A] trusted certification makes it cheaper, in terms of the cost of gathering

---

[6] Plaintiffs do allege that ABMS has "lobbied for and induced [hospitals and commercial payers] to require ABMS certification." (Compl. ¶ 73 n. 32.) This allegation is both conclusory and fails to allege any specific facts. It is therefore insufficient to survive a motion to dismiss. At most, this allegation asserts that ABMS has attempted to demonstrate the value of certification by member Boards. There is nothing anticompetitive about such conduct. *Int'l Healthcare Mgmt.*, 332 F.3d at 608; *TYR Sport*, 709 F. Supp. 2d at 810 ("Promotion and persuasion are not actionable as antitrust violations, even where the speaker holds extraordinary prestige and influence."). *See also Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488 (D.C. Cir. 1984) ("[T]his court will not infer a conspiracy to violate the antitrust laws based on a showing of regular contact between two independent professional associations on general matters of mutual interest and concern.").

information, to hire a stranger, so strangers can compete more effectively . . . .
[T]his increased competition and reduced transaction cost will reduce prices.").

Physicians can and do practice medicine without certification by an ABMS
member Board. As plaintiffs themselves allege, 10% of licensed physicians in the
United States are not certified, which means that there are tens of thousands of non-
Board certified physicians who are currently practicing medicine. (Compl. ¶ 45.)
And not all hospitals or insurers require participation (or full participation) in the
MOC program as a condition of having staff privileges. (*Id.* at ¶ 71 (alleging only
that "the vast majority of insurers and hospitals in the United States require
physicians to have ABMS board certification in order to treat and admit patients");
*id.* ¶ at 45 n. 5 (stating that non-certified physicians can treat cash-paying or
government insured patients).)

That non-ABMS member Board certified physicians can practice medicine
and enjoy staff privileges without participating in MOC further confirms there is no
restraint of trade here. *See, e.g.*, *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40
F.3d 247, 251 (7th Cir. 1994) ("[P]laintiffs already are sellers in the market for
psychiatric services; turning down their applications for certification does not
remove their output from the market and therefore does not raise prices to
consumers."); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, No. 91-1366, 1992
WL 246906, at *6 (7th Cir. Oct. 1, 1992) ("[T]here is no evidence that membership
in these societies is necessary to practice sport medicine or hand surgery. In other
words, there is no evidence of any restraint of trade."); *Allyn v. Am. Bd. of Med.
Specialties, Inc.*, No. 5:18-CV-355-OC-30PRL, 2019 WL 297459, at *6 (M.D. Fla.
Jan. 3, 2019), *report and recommendation adopted*, No. 5:18-CV-355-OC-30PRL,
2019 WL 293277 (M.D. Fla. Jan. 23, 2019) (finding no claim where only alleged
restraint was ABMS and a member Board "using their reputation to encourage third
parties to seek out fellowship-trained and certified physicians"); *Ass'n of Am.
Physicians & Surgeons, Inc. v. Am. Bd. of Medical Specialties*, No. 14-cv-02705,

2017 WL 6821094, at *5 (N.D. Ill. Dec. 13, 2017) (finding plaintiff failed to plead a restraint of trade where allegations showed that ABMS has no authority over hospitals or insurers).

Moreover, plaintiffs have made no allegation to counter the point that, if hospitals or insurers believe that MOC is unnecessary and that an initial certification by an ABMS member Board is a sufficient marker of quality, then those institutions can rely on the expired initial certification. Just as ABMS and its member Boards have no ability to restrain the competitive activities of physicians, ABMS and its member Boards also have no control over the decision-making of the hospitals and insurers who independently choose to use Board certification in their decision-making.

Notably, plaintiffs are not challenging Board certification in general. Instead, by challenging MOC, plaintiffs seek to force ABMS member Boards, including ABEM and ABA, to grant certification without any time limitation – or to accept analogous but different programs from other entities with lesser requirements for purposes of satisfying the MOC requirements of ABMS member Boards. But the antitrust laws do not require these member Boards to grant non-time-limited certification or to substitute the programs of other entities for their own.

By establishing the MOC program, ABMS and its member Boards have sought to create a system through which certified physicians demonstrate that, in the judgment of these member Boards, they continue to merit certification. By reporting whether physicians are meeting the requirements of MOC, ABMS helps the public make informed choices concerning the qualifications of physicians and whether those physicians are keeping up-to-date with advancing medical knowledge. The relief sought by plaintiffs would interfere with the ability of ABMS and its member Boards to provide this service. Plaintiffs' Sherman Act claim and related state claims should be dismissed.

**B.** *Plaintiffs Have Failed to Allege Any Facts That Would Support a Tying Claim.*

Initially, it would be ironic indeed if an antitrust violation were found on the basis of an allegedly unlawful tying arrangement where, as here, there is no restraint of trade. The law of tying is designed to protect against certain specific practices – tying arrangements that suppress competition in the market for the tied product, that are thought to have anticompetitive effects. But where, as here, there is no restraint of trade, there can be, *ipso facto*, no anticompetitive effect.

In any event, in order to plead a tying arrangement in violation of the Sherman Act, a plaintiff must allege (1) that there exist two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market. *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003). Here, plaintiffs have failed to allege facts to support the first two elements – as there is only one product at issue, and plaintiffs have not alleged facts to show that ABMS or its member Boards have market power. Moreover, the fact that MOC involves no restraint at all means that plaintiffs cannot satisfy the third element.

### 1. Plaintiffs Have Failed to Allege Two Separate Products for Purposes of Their Tying Claim.

Whether there are two products turns not on the functional relationship between them, but rather on the character of the demand for the two items. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 19 (1984). Here, ABMS member Boards offer only one service – certification of physicians in specific medical specialties and subspecialties. (Compl. ¶ 44.) In the past, some ABMS member Boards offered certification without time limitation. (*Id.* at ¶ 55.) But, for

1  nearly thirty years, certification by ABMS member Boards has been time-limited.

2  (*Id.* at ¶ 56.) If physicians wish to maintain certification from an ABMS member

3  Board after the initial period of certification, they need to participate in that

4  member Board's MOC program. (*Id.* at ¶ 58.) The "product" that physicians want,

5  and that the member Boards provide, is certification; Maintenance of Certification

6  is not a second product that is provided separately.

7      Renewal of magazine subscriptions provides an analogy. When readers

8  purchase a three-year magazine subscription and later decide that they want to

9  continue to receive the magazine, the renewal of the subscription is not a second

10  product separate from the initial subscription. Rather, it is a continuation of a single

11  product. More generally, where the "two products" that plaintiffs have identified

12  are really only a single product, courts reject tying claims. *See Collins v. Associated*

13  *Pathologists*, 844 F.2d 473, 477-78 (7th Cir. 1988) ("[P]athology services are not a

14  separate and distinct product from hospital services, they combine in the form of

15  one product, not two tied products."); *Lane v. Wells Fargo Banks, N.A.*, No. C 12-

16  04026, 2013 WL 5587942, at *2 (N.D. Cal. Oct. 10, 2013) ("[P]urchasing

17  insurance for someone and being an insurance agent for someone are the same

18  thing.")[7]; *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 953 F. Supp. 617, 654

19  (E.D. Pa. 1997) (finding the single product of residential heating "[a]dmittedly . . .

20  has separate components" and stating, "[i]n the absence of a second product, a tying

21  arrangement cannot exist").

22      The Ninth Circuit has so held. In *Klamath-Lake Pharm. Association v.*

23  *Klamath Medical Service Bureau*, 701 F.2d 1276, 1289 (9th Cir. 1983), that Court

24  rejected a claim that "an insurance benefit covering prescription drugs" could be

25  tied with "the form in which that benefit is to be provided." The Court of Appeals

26

27

28

---

[7] *Lane* discusses application of the Bank Holding Company Act, which applies the general principles of the Sherman Act prohibiting anticompetitive tying specifically to the field of commercial banking. *S&N Equipment Comp. v. Casa Grande Cotton Finance Co.*, 97 F.3d 337, 343 (9th Cir. 1996).

considered consumer demand and found that there was no separation between the pharmacy benefit and the restrictions on the sources where the drugs could be purchased. *Id.* at 1290. Consumers sought a way to transfer the risk of high pharmacy bills and bought insurance to do so. *Id.* Purchasing drugs in the manner required by the insurance plan was "the consummation of the pharmacy benefit, not an unwanted and unnecessary product tied to the desired product." *Id. See also Abraham v. Intermountain Health Care, Inc.*, 394 F. Supp. 2d 1312, 1318-20 (D. Utah 2005) (rejecting tying claims in the health insurance context, finding that consumers are purchasing only one product – access to health care – rather than heath care coverage and access to care by certain providers). Here, physicians seek certification as a way to efficiently and effectively communicate their qualifications to the marketplace. The steps they take to maintain that certification via MOC programs is a part of the overall certification process.

Plaintiffs claim that the fact that the National Board of Physician and Surgeons ("NBPAS") sells MOC but not IBC "illustrates the distinct nature of the IBC and MOC markets." (Compl. ¶ 73 n. 31.) But their allegations show that what NBPAS actually sells is its own competitive certification product. (*Id.* at ¶ 73.) Like ABMS member Boards, NBPAS has created its own requirements for certification. ABMS member Boards and NBPAS Boards compete to certify physicians. The fact that NBPAS has targeted a subset of the market – physicians who have already been certified by an ABMS member Board – does not suggest that MOC and IBC are separate products – any more than the fact that tire companies sell tires independently of cars means that an automobile manufacturer has engaged in an unlawful tie when its cars use only one brand of tire.[8]

---

[8] The allegation that ABMS member Boards will not accept NBPAS MOC is of no moment. "Antitrust law does not compel your competitor to praise your product or sponsor your work." *Schachar*, 870 F.2d at 399. "To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law." *Id. See also Trinko, LLP*, 540 U.S. at 411 (noting that there are "few existing

ABMS member Boards offer only one service – certification of physicians. Plaintiffs attempt to carve that service into two products by making an artificial distinction between certification at the start of a physician's career and maintenance of that certification over the physician's period of practice. Regardless of when entitlement to certification is determined, certification remains a single product.

### 2. Plaintiffs Have Failed to Allege Market Power.

In all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product. *Ill. Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 46 (2006). Market power is the power to force a purchaser to do something that he would not do in a competitive market. *Jefferson Parish*, 466 U.S. at 14. A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint. *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 972 (9th Cir. 2008).

Plaintiffs allege that 90% of licensed physicians are Board certified and that ABMS is the "dominant provider of IBC" in the United States. (Compl. ¶ 45; *see also id.* at ¶ 52.) Market share can sometimes be a proxy for market power, but a high market share alone is insufficient to infer a seller's market power if other characteristics of the product market interfere with the seller's control of prices. *See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) (explaining that the Sherman Act does not target "growth or development as a consequence of a superior product, business acumen, or historic accident"); *Kaufman v. Time Warner*, 836 F.3d 137, 143 (2d Cir. 2016); *see also Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1334-37 (7th Cir. 1986). Plaintiffs allege that there are "high entry barriers" to entry in their supposed IBC and MOC markets, but they allege no factual support for this conclusory allegation. (Compl. ¶ 72.) Indeed, physicians can choose to certify via another certifying organization at any time.

exceptions to the proposition that there is no duty to aid competitors").

1    Plaintiffs themselves have alleged that NBPAS has recently entered the

2    alleged market as a rival to ABMS member Boards. (Compl. ¶ 73.) They allege that

3    NBPAS has been able to gain a "national presence" and to offer a "comparable

4    MOC product." *Id.* Plaintiffs' own allegations therefore show the lack of barriers to

5    entry. In such a market, plaintiffs must allege more than simply a high market share

6    to show market power.

7    With respect to market power, a plaintiff must allege facts that, if proven,

8    would establish that the defendant can control output and prices. *Ball Mem'l Hosp.*,

9    784 F.2d at 1336. Here, plaintiffs have alleged only that ABMS member Boards are

10   currently successful. This allegation is insufficient to show market power. Indeed,

11   plaintiffs' own allegations with respect to NBPAS belie their conclusory allegations

12   about the supposed market power of ABMS member Boards. Thus, "[p]laintiffs,

13   who want to obtain a credential that will help them charge higher prices, have

14   pleaded themselves out of court on the antitrust claim." *Cf. Sanjuan*, 40 F.3d at 252.

### 3.    Plaintiffs Have Failed To Allege Foreclosure Of A Not Insubstantial Amount of Commerce.

17    Plaintiffs' allegations of high or "supra-competitive" pricing (Compl. ¶ 7) do

18   not demonstrate foreclosure of a not insubstantial amount of commerce. As noted

19   above, a decision to seek and maintain certification by ABMS members Boards is

20   entirely voluntarily. And neither ABMS nor any member Board requires any

21   decision-maker to accept its certification. Thus, there cannot be foreclosure of a not

22   insubstantial amount of commerce.

23   As the Ninth Circuit noted in *Brantley v. NBC Universal, Inc.,* 675 F.3d

24   1192, 1199 (9th Cir. 2012), a company's exploitation of its market position "by

25   merely enhancing the price of its tying product" does not threaten antitrust injury.

26   The Ninth Circuit went on to observe that where a firm has a "natural monopoly" in

27   the tied product, a tying arrangement cannot adversely affect competition in the tied

28   market, because there was no competition to affect. [W]hen a purchaser is 'forced'

to buy a product he would not have otherwise bought even from another seller in the tied product market, there can be no adverse impact on competition because no portion of the market which would have otherwise been available to other sellers has been foreclosed. *Id.*

### C.  *Plaintiffs Have Failed To Allege Any Facts That Would Support A Claim of Monopolization.*

A superior market position achieved "as a consequence of a superior product, business acumen, or historic accident" does not offend the antitrust laws. *Pacific Bell Tel.,* 555 U.S. at 448. To support a claim for monopolization, plaintiffs must allege exclusionary or predatory actions committed by the defendants that led to (a) the acquisition of the defendant's position; and (b) the maintenance of that position. Plaintiffs here have alleged neither.

The only inference that can fairly be drawn from the Complaint is that ABMS and its member Boards acquired their high market shares by offering a superior product, *i.e.* certification, with standards that users of that product value. According to the Complaint, the need to distinguish physicians who possessed the qualifications and ability to render specialized medical care became evident almost a century ago. Recognizing that need, the ABMS "develop[ed] . . . a national system of standards for recognizing specialists and providing information to the public." (Compl. ¶ 52.) Nowhere in the Complaint is there even a whiff of improper actions by the defendants in the process of achieving their high market shares.

Plaintiffs apparently view the efforts of ABMS and its member Boards to continue evolving their respective programs for the acquisition and maintenance of certification as improper. But the Sherman Act does not require a business to forego change or innovation. The Ninth Circuit thus observed in *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group, LP,* 592 F.3d 991, 1001 (2010), that product design changes upon which the plaintiff's Sherman Act claims were based,

were "innovation," not an antitrust violation.

Plaintiffs similarly fail to allege the illegal *maintenance* of market position. Apart from conclusory recitations, the plaintiffs have not alleged that the defendants used their market position "to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,* 836 F.3d 1171, 1183 (9th Cir. 2016). Plaintiffs claim that hospitals, insurers and other health care entities made specialty board certification "so essential . . . that a doctor who is fully licensed by their state and authorized by law to practice medicine, but who is not also a board certified physician in their given specialty cannot expect to maintain a commercial practice, including maintaining hospital admissions privileges," (Compl. ¶ 49) and that "insurance companies place significant weight on, if not requiring or effectively requiring, board certification" (*id.* ¶ 51). Notably, these are not actions by the defendants, but by independent third parties who value the certification process of ABMS member Boards.

Widespread acceptance and adoption of an industry standard does not connote anticompetitive behavior -- as the Court acknowledged in *International Norcent Technology v. Koninklijke Philips Electronics, N.V.*, Case No. CV 07-00043, 2007 WL 4976364 at *7 (C.D. Cal. Oct. 29, 2007). There, the plaintiff alleged that the defendants collaborated with competitors to create a product standard for the industry, making it difficult for the plaintiff to compete. However, the Court concluded that the promotion of an industry standard, and widespread acceptance and reliance on that standard, did not constitute coercion. The absence of evidence that the defendant's customers were coerced into accepting the standard doomed the plaintiff's claim.

In short, a strong position, achieved and maintained without demonstrable anticompetitive actions, is not an antitrust offense. *Pacific Bell Tel.*, 555 U.S. at 47-48.

**D.** *Plaintiffs Have Failed To Allege Facts Supporting A Finding Of Antitrust Injury.*

Plaintiffs allege that they paid too much for the MOC programs implemented by the ABA, ABEM, and other ABMS member Boards. However, the antitrust laws are designed to protect competition, not competitors. *Brunswick Corp.,* 429 U.S. at 489. Accordingly, an antitrust plaintiff seeking redress through the Sherman Act must allege "an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Atlantic Richfield Co.,* 495 U.S. at 334. Antitrust injury is demonstrated by "a causal relationship between the harm and the challenged aspect of the alleged violation." *Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 899 F.2d 951,961 (10th Cir. 1990).

Antitrust attacks on certifying organizations have often been dismissed because the plaintiffs cannot show antitrust injury. Thus, for example, in *Sanjuan v. American Board of Psychiatry and Neurology, Inc.,* 40 F.3d 247 (7th Cir. 1994), a physician who passed ABPN's written certification exam but failed the oral exam sued the certifying Board. Dismissing plaintiff's claims, the Seventh Circuit ruled as follows:

> It is hard to see how the Board's activities could amount to an exercise of market power, which entails cutting back output in the market and thus driving up prices to consumers. . . . After all, plaintiffs already are sellers in the market for psychiatric services; turning down their applications for certification does not remove their output from the market and therefore does not raise prices to consumers. 40 F.3d at 251.

The plaintiffs in *Sanjuan* contended, as do these plaintiffs, that the earnings of non-certified physicians fall short of their colleagues. To this contention, Judge Easterbrook replied: "The claim that a practice reduces (particular) producers' incomes has nothing to do with the antitrust laws, which are designed to drive producers' prices down rather than up." *Id.*

The Ninth Circuit relied on similar principles to affirm the dismissal of Sherman Act claims in *Brantley v. NBC Universal, Inc.,* 675 F.3d 1192 (9th Cir.

Schiff Hardin LLP
Attorneys At Law
San Francisco

2012). The plaintiffs in that case based their Sherman Act claims on the defendants' practice of selling multi-channel cable packages. According to the plaintiffs, the practice injured competitors by making it more difficult for them to compete in the cable market and precluding them from offering a la carte programming; consumers would be forced to give up purchasing substitute cable channel access. The result, according to the plaintiffs was reduced consumer choice and increased prices. *Id.* at 1195-1196.

The Court of Appeals held that this allegation failed to allege antitrust injury to the plaintiffs. Critical to the Court's conclusion was the plaintiffs' failure to allege that the practice excluded competitors or reduced output, and the absence of allegations demonstrating that the plaintiffs were prevented from purchasing other channels.[9] Significantly, the Court admonished that plaintiffs could not substitute allegations of injury to themselves for allegations of injury to competition. *Id.*

The admonition against substituting one's personal injury for competitive injury took on a different cast in the district court's decision in *Natkin v. American Osteopathic Ass'n,* Case No. 3:16-cv-01494, 2018 WL 452165 (D. Ore. Jan. 17, 2018). In that case, the plaintiff alleged that the lack of certification from the defendant prevented him from contracting with insurers. The Court dismissed the first complaint for lack of antitrust injury, stating "[P]ersonal economic injury, such as loss of income from market exclusion, is not enough" to support a Sherman Act claim. 2018 WL 452165 at *6 (citing *Les Shockley Racing, Inc. v. Nat'l Hot Rod Assn'n*, 829 F.2d 729, 735 (9th Cir. 1989). The Court afforded the plaintiff an opportunity to amend the complaint, but his Amended Complaint suffered the same fate as the original.

---

[9] In *Hilton v. Children's Hospital-San Diego*, Case No. 02-cv-1080, 2007 WL 935724 (SD Cal. March 7, 2007) (Lorenz, J.), this Court similarly jettisoned the plaintiff's Sherman Act claims, citing the absence of antitrust injury. The plaintiff failed to demonstrate the exclusion of competitors, a diminished quality of care, or increased prices in the market for the plaintiffs' services.

The second time around, the plaintiff asserted that the lack of certification prevented him from competing in the market for Board certified psychiatrists. The Court again rejected this as antitrust injury. Adding to its admonition that personal injury is not antitrust injury, the Court observed that the aim of the plaintiff's lawsuit was to "be admitted to the alleged antitrust conspiracy to increase his job opportunities, wages [and] earning potential, and the profitability of his practice." *Natkin v. American Osteopathic Ass'n*, Case No. 3:16-CV-01494, 2018 WL 6920122 at *13 (D. Ore. Oct. 18, 2018).[10] That isn't antitrust injury. The plaintiff did not seek to disband the group or end its ability to exclude physicians from gaining certification, he just wanted to join the group.

## III. PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM FOR UNJUST ENRICHMENT.

### A. *Plaintiffs' Unjust Enrichment Claim Against ABMS Should Be Dismissed.*

Plaintiffs' unjust enrichment claim against ABMS should be dismissed because plaintiffs do not and cannot allege the factual predicate for this claim – that ABMS sells MOC to plaintiffs. Because ABMS does not certify physicians and does not have an MOC program, plaintiffs fail to state an unjust enrichment claim against ABMS.

### B. *Plaintiffs' Unjust Enrichment Claim Against ABEM and ABA Should Be Dismissed.*

Plaintiffs' unjust enrichment claim against ABEM and ABA should be dismissed for two independent reasons. First, an unjust enrichment claim is precluded where, as here, a "binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Here, ABEM's and ABA's revenues from their MOC programs are

---

[10] *See*, also, *Shaywitz v. American Board of Psychiatry and Neurology*, 675 F. Supp. 2d 376, 387 (S.D.N.Y. 2009) (plaintiff physicians must show harm to consumers, not physicians; inability to "join the cartel" is not antitrust injury).

established by agreements with plaintiffs. (Compl. ¶¶ 13-14.) Therefore, the unjust enrichment claim against ABEM and ABA should be dismissed.

Second, there "is no equitable reason for invoking [unjust enrichment] when the plaintiff gets the exchange which he expected." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008). "Here, plaintiffs received the benefit of the bargain." *Id.* Indeed, plaintiffs do not and cannot plead that they failed to receive any benefit in exchange for their purchase of MOC from ABEM or ABA. For this additional reason, plaintiffs' unjust enrichment claim should be dismissed.

## IV.   ABMS AND ABEM EACH HAVE SEPARATE GROUNDS FOR DISMISSING PLAINTIFFS' CLAIMS.

In addition to the arguments discussed above that apply to all defendants, ABMS and ABEM also have individual bases for dismissing the Complaint against them. First, plaintiffs do not have standing to bring claims under the Sherman Act against ABMS because plaintiffs have not alleged that they are direct purchasers of anything from ABMS. Second, the two emergency medicine plaintiffs – Drs. Mannis and French – signed arbitration agreements by which they agreed not to litigate claims against ABEM but rather to proceed by arbitration.

### A.   *Plaintiffs Do Not Have Standing to Sue ABMS Under the Sherman Act Because They Are Not Direct Purchasers.*

Section 4 of the Clayton Act provides that "any person who shall be injured" by a violation of the antitrust laws may bring an antitrust claim. 15 U.S.C. § 15(a). The Supreme Court has interpreted this provision to hold that only direct purchasers may state an antitrust claim. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 217 (1990); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728 (1977).

ABMS is an umbrella organization for twenty-four member Boards. (Compl. ¶ 16.) ABMS does not certify physicians; its member Boards do. None of the plaintiffs allege, or can allege, that they have been certified by ABMS or have to participate in an MOC program of ABMS. Instead, plaintiffs allege that they have

been certified by ABEM or ABA. (*Id.* at ¶¶ 13-15.) Consequently, they have not alleged that they are direct purchasers of any product or service from ABMS and therefore lack standing under Section 4 of the Clayton Act to assert an antitrust violation against ABMS. *See Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1118-25 (9th Cir. 2008). Count I should be dismissed against ABMS for this reason.

### B. *Plaintiffs Have Agreed to Arbitrate Any Claims Against ABEM.*

Plaintiffs Mannis and French allege that they are or were certified by ABEM. (Compl. ¶¶ 13-14.) During the relevant time period, ABEM required that all applicants for certification assent to the ABEM Certification Agreement (formerly called the "ABEM Maintenance of Certification Participation Agreement"). (*See* Reisdorff Decl. ¶ 8.) The ABEM Certification Agreement states, in relevant part:

> I agree that any controversy or claim arising out of or relating to this Agreement, or the breach thereof, that cannot be resolved directly between the parties, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in the Circuit Court of Ingham County, Michigan.

(Exhibits 1 and 2 to Reisdorff Decl.)[11]

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1 et seq. A district court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

---

[11] The Court may consider evidence on which the complaint necessarily relies, if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, these factors are met because plaintiffs Mannis and French have alleged that they are or were certified by ABEM. (Compl. ¶¶ 13-14.)

Here, there is a valid agreement that contains an arbitration provision that binds both Dr. Mannis and Dr. French. That provision states that "any controversy or claim arising out of or relating to this Agreement, or the breach thereof" shall be settled by arbitration. (Exhibits 1 and 2 to Reisdorff Decl.) Plaintiffs' claims explicitly arise from their purchase of certification services from ABEM. (Compl. ¶¶ 13-14, 71-74.) All claims against ABEM are subject to arbitration and therefore should be dismissed.[12] *See Nazara v. FR Log Homes, Inc.*, 474 Fed. Appx. 517, 518 (9th Cir. 2012) (affirming dismissal of claim subject to arbitration provision).

## <u>CONCLUSION</u>

For the reasons set forth above, ABMS, ABEM, and ABA respectfully request that the Complaint be transferred to the Northern District of Illinois or dismissed for failure to state a cause of action.

Dated: April 25, 2019       Respectfully submitted,

/s/ Jean-Paul P. Cart
  SCHIFF HARDIN LLP
  JEAN-PAUL P. CART (SBN 267516)
  JACK R. BIERIG (PHV)

*Attorneys for Defendants ABMS and ABEM*

Dated:  April 25, 2019     /s/ Natalma M. McKnew
FOX ROTHSCHILD LLP
JOHN J. SHAEFFER (SBN 138331)
NATALMA M. MCKNEW (PHV)
MAUREEN DEMAREST MURRAY (PHV)

*Attorneys for Defendant ABA*

---

[12] Plaintiff Lim is an anesthesiologist who does not allege that he was certified by ABEM and so lacks standing to bring any claim against ABEM. (Compl. ¶ 15.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **SIGNATURE CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Natalma M. McKnew, counsel for Defendant American Board of Anesthesiology, and that I have obtained Ms. McKnew's authorization to affix her electronic signature to this document.


Dated:  April 25, 2019                    By:  /s/ Jean-Paul P. Cart
                                                Jean-Paul P. Cart